The next case on the docket is Phillips v. Lynch. Good morning. I meant to say this for the other folks. There's a button on your right-hand side there, and if you press that, that podium should go up. No, no. There you go. Is that as high as it will go? It's helpful to us if the microphone is sort of right in front of you. You don't have to lean over to it, but there we go. That's great. Thank you. Good morning, Your Honors. My name is Paul Grotus. I may please the Court. I would like to reserve two minutes for rebuttal. I'm here on behalf of the appellant. My client, the appellant Fay Phillips, has a constitutionally protected interest in her pursuing her application for naturalization. However, due to the actions of USCIS, her rights have been severely violated. A federal court has the ability to grant citizenship nunc pro tonc to alleviate the wrongs committed by USCIS, where, as is the case here, constitutional violations have occurred. Based upon the egregious acts of USCIS, we ask this Court, as many federal courts in the past have done, to remand this case to the district court and order them to grant Ms. Phillips' application nunc pro tonc. Ms. Phillips is a longtime lawful permanent resident. She submitted an application for naturalization in 1997, and she met all the criteria for naturalization as enumerated in 8 U.S.C. 1427. She appeared for an interview. She passed all the examinations and submitted all the requested documentation. Nevertheless, USCIS erroneously issued an RFE, a request for further evidence, and thereafter denied her application on April 28, 2000, asserting that she failed to submit her birth certificate. This error is transparent and cannot be ignored. Can I ask you about that claimed error? You say the story seems to be that she went back a couple of times with the birth certificate after she got the request. So it appears at the time she had not given them the birth certificate. She went back to give it to them a couple of times at least, shortly after the notice came to her. No, no, that's not our claim. Our claim is that USCIS had the birth certificate in their file, which is evidenced by the ROP. That's what I want to ask about. You say that upon examination of the ROP, INS was clearly in possession of her birth certificate prior to issuing a request for evidence, and you cite pages 56, 57, and 109 of the ROP, which are copies of the birth certificate. Yes, Your Honor. But is there any indication that there's like a date stamp on it or something to show that she actually did show up with it right after she got the notice and before her denial? Your Honor, unfortunately, she was unrepresented at the time. It is my practice if I was represented at the time, I would have submitted a cover letter and had a duplicate stamp at that time. However, she has no additional evidence that she submitted it after her interview. However, we would posit to the court that the birth certificate must have been in the file because the only application submitted after her naturalization was the N336 to USCIS, which we clearly didn't include the birth certificate in that N336 application. Therefore, it must have been in USCIS's file prior to her naturalization, and additionally, her prior applications would have included her birth certificate. So what's your perspective on or how would you have us find or review the record and conclude that all the administrative acts that were necessary, all the administrative process was completed? When was that? Your Honor, it's a little bit of a complicated timeline. It's our position. I think that there's really two. There's the N336 and the mandamus action. I think that really breaks down the administrative acts. It's our claim that if this Court sees fit, we would ask it to be remanded for the application to be granted non pro tonque or on the alternative to amend the pleadings. It's our claim that my client had gone back to USCIS with this document and that from that date the 30-day deadline for the filing of the N336 or the six-year deadline for the mandamus should be told. It's clear, though, that on April 28, 2000, she did get a letter saying, we don't have your birth certificate still and you have 30 days in which to appeal. So as of that time, whether she had brought this birth certificate or not before then, as you claim, she was on notice that she had 30 days to appeal that administrative decision and go in and say, you have my birth certificate, I gave it to you, there's three copies in the file. But she didn't do anything, right? No, it's our claim that our client did do something, that she did go back, she did tell them that you do have my birth certificate and that she was told by a USCIS official who maybe had consulted the very file in front of them and seen the birth certificate there, that there may have been a mistake and that she would receive a swearing-in oath ceremony. Did she file a request for a hearing, the N336? We filed a request for the N336 on her behalf. Yes, but 10 years later. Yes, no, she did not file. What I mean is she gets the notice April 28, 2000, saying we don't have your birth certificate, we're denying it, you have 30 days in which to file this request for a hearing. She didn't do it, right? That is correct, Your Honor. But did she try to do anything after that for the 10 years? Well, she had gone back to USCIS and made additional inquiries. And I know that the biggest problem for this Court is that there's no paper in the file regarding those inquiries. Currently, there is an infopass system whereby if someone goes to USCIS and makes an inquiry that they are given a record, but it's my understanding at the time there may not have been any sort of record keeping for inquiries that were made, especially because I don't think an infopass system existed at the time. It was merely just a walk-in and inquire. This was back in, what, 2000 or something? Yes, Your Honor. It was a long time ago. So I think that there is a lack of a paper trail, but I think that that lack of paper trail is solely due to the time period in which we're living or the time period in which these events occurred. But is it your contention that there were sort of repeated efforts throughout the years or that, in fact, it stopped at some point after she was told that she's going to get a swearing-in date. She doesn't get a swearing-in date. She goes back. She keeps going back. What is the contention? Our contention is that her client kept going back and that it's a perfect issue for an amended petition or maybe even possibly a deposition between the parties to further because, in all honesty, I'm not the person who went back to USCIS, and I can only relate to the information that my client has told me. I think it's a better practice to have the actual person who went back to USCIS make those statements sworn under oath.  What happened was her son. Her son was ordered removed from the United States, and it was prior to that order of removal that she contacted me because if she, if USCIS had simply looked in their file and seen the birth certificate, she would have been naturalized prior to her son's 18th birthday, and then her son would have derived citizenship automatically. But as a practical matter, I mean, I know you keep saying non-proton, but she's not a citizen until she's sworn in as a citizen, right? It's our contention that a district court or a federal court has the ability to grant citizenship. What's your authority for that? In Brown, which side of the Supreme Court, and I'm going to have to, in Wachope, the Ninth Circuit Court of Appeals cited the Supreme Court in W-A-U-C-H-O-P-E, Wachope. Okay. And that jurisprudence you suggest or say authorizes a U.S. district court to grant citizenship non-proton? Yes, Your Honor. In Wachope, the Supreme Court said that a federal court has the ability to grant citizenship for constitutional violations, including violations of the Due Process Clause. And I think this is the matter here, that it's unfair for a governmental agency to request a birth certificate to grant citizenship when a birth certificate is not required under the statute under the memo. And even further, what makes it rise to the level of a violation is that the birth certificate was already in the file. I think I'm out of time. Yes. I think you are, but you have reserved some time for rebuttal, and we'll hear from Mr. Dunn. Good morning, Your Honor. Good morning, Mr. Chief. May it please the Court, my name is Scott Dunn. I'm an assistant United States attorney from the Eastern District of New York, and I represent the respondents in this matter. Naturalization is a creature of statute. And in 8 U.S.C. 1421d, Congress has said that the only way someone can get naturalized are through the provisions set forth in the naturalization statutes. And those provisions also have a process for review of denial of naturalization applications and ultimately a review, a de novo review of all things, which is unusual in the immigration context, in district court under 8 U.S.C. 1421c. That statute, and that's really the focal point here, provides specifically that a district court only has jurisdiction if a hearing was held before an immigration officer on the naturalization application. And the implementing regulations related to that statute provide that if there's a denial of a naturalization application, then the individual has 30 days in which to apply for such hearing. Petitioner didn't apply for a hearing in 30 days, although, as the Court pointed out, she had received the denial. She admits the receipt of the denial, and that denial reflects very clearly that  she didn't request the denial in 30 days. Just remind me, does the denial indicate the reason that it is being denied? Yes, it does, Your Honor. And that is? Her failure to provide the birth certificate that was requested. And the contention is, which, whether the government is disputing that or not, is that that birth certificate was already in the hands of the agency that wanted it. The contention made by Petitioner. Right. Right. First of all, that wasn't raised in the N-336, which is in 2014, 14 years later. And so that by itself has an exhaustion of administrative remedies problem. But and secondly, it's not clear that it was for the reasons that the Court pointed out. There's no date stamps of any time. So we don't even know when that got into the record. But this is an important point, I think, just in terms of the fairness of it all. Even if it was, it doesn't mean that the immigration authorities couldn't ask for additional information related to it. It doesn't mean that they were satisfied with that. And if you look at that birth certificate, I'm sure the Court has seen other birth certificates, it's not so clear. That birth certificate itself is not so clear. So it's very possible, although I don't know and none of us know because this is 14 years ago, which is why you have the 30-day time period to begin with. None of us know what's in the head of that officer. But one thing's for sure, that that ---- So it's possible that the copies in the ROP were there, but the officials said, we don't think these are legitimate? Or how did they get into the ROP, the three copies of the birth certificate? So they could have gotten in at a later date. It's possible they got in at a later date. They were in your file. It could have been in a different type of file, a temporary file, and it got in that way as well. So there's definitely different possibilities as to how it could have gotten into ---- One of the possibilities is that the initial officer thought this wasn't a legitimate birth certificate and said to her, you've got to bring in the real one? Sure. It happens all the time. And if you note something interesting in the complaint that I just picked up, because first of all, there's a lot of fraud in these areas. Second of all, there's a lot of kind of secondary and tertiary documentation that people have, even if they're being straight to supply and the government wants more. If you notice, even Petitioner, Petitioner's counsel, and he's on top of the case and a very excellent attorney, got it wrong as to where she was from. If you look in the complaint, you'll see that they allege that she's from St. Thomas as opposed to from Jamaica. And if you look at the birth certificate, you'll see it says St. Thomas, but St. Thomas is really the parish. My only point being that these things aren't so simple, right? These things aren't so clear. So it's very possible that ---- The birth certificate does say St. Thomas, right, place of birth? It says St. Thomas. But that turns out to be the parish within Jamaica. But who knows? You know what I mean? Like, who knows what the officer was thinking? I'm just pointing out that these things are not clear. St. Thomas, Virgin Islands. Right. Right. Exactly. I'm just saying these things are very not clear. All our problems and we could go home. Okay. Counsel. Exactly. Exactly, Your Honor. May I ask about the failure to treat the N336 as a motion to reopen? And looking at the requirements, it's not entirely clear to me that those weren't met. Could you address your view as to why they ---- why it was appropriate not to treat it as a motion to reopen? Sure. And just to kind of give a breath to the claims that Petitioner is making, he has three claims, right? One of the claims is related to the motion to reopen was that it was in the file already. Again, that claim wasn't addressed in the denial because it wasn't made in the N336. So that was one of the claims that the Petitioner made, that it was already in the file. The second claim is that even if it wasn't, it wasn't needed. So it was a request that had no appropriate basis in terms of request of documentation. Again, that request wasn't made in the N336. So, of course, it wasn't considered by the immigration authorities. And even if it was under 8 U.S.C. 1446b, the government has a wide, wide discretion in terms of the type of documents it could ask for, certainly birth certificate being one of them. So finally, what's the question that is in the N336? And that's this whole history, story of Misfield's efforts, right, to supply a document. And who knows? Who knows what happened? Like, we don't know what happened. And because of that reason and because it's 14 years later, if the Court looks at the appropriate regulation, which is 8 CFR 336.2c1, that references 103.5a, right? You're having to meet the standards for a motion to reopen, right? That's the threshold. Are we going to treat this like a motion to reopen? And only after you decide if you're going to treat it like a motion to reopen do you adjudicate it. So the government decided not to treat this as a motion to reopen because one of the reasons it's not a motion to claim, remember, the only thing we're looking at is the claim related to her efforts. She said, I tried. I tried to give this birth certificate, and I did. And so the government said, oh, show us some documents. Show us those documentation related to that effort. And so consistent with, and it's one of the consistent themes of this, Your Honor, is that 14 years have gone by, and Petitioner didn't bring anything, not a single document to show of her efforts. Now, she can't name a name of an individual that she met. She met a whole host of individuals. And I point out that she was focused on what was going on because she talks about, I tried to get a receipt, and I couldn't get a receipt. So this was someone who was aware of the importance of that. She didn't get a name. And there are other things, too. If you notice, she talks about, these are just little things that I pick up, but there are so many other things that one could look at. She talks about going there by cab, you know, by a cab service. So maybe, you know, she's referring to some sort of car service, and maybe there would be records or something. I'm just using that as an example, but there are a thousand different examples that one who's focused on could bring, knowing the standard, she has a good attorney, again, documentation. The reg requires documentation, and she didn't bring any. So all Judge Hurley said was, that's reasonable, and maybe someone would decide it differently, but that's not unreasonable. And that's the government's argument with that. Whether the standard is arbitrary, pericious, or abuse of discretion, all the government's arguing under the facts in this case 14 years later, a regulation that requires documentation, you didn't come up with anything. Roberts.  Thank you, Your Honor. In rebuttal, I would like to point to page 60 and page 63 of the administrative record, which is the check was mailed by INS, which specifically, if you review it, which we have in detail, it does not say that a birth certificate was required. You're on what page? 60 and 63. Yeah. What page of the appendix is that, though? It's the supplemental appendix, right? Because there's different pages for the ROP. Is it 86? It's 82 and 83. I'm sorry, 81 and 82. Yes. Of the supplemental appendix. 86, right? 86. No, sorry, 82. So this was the notice mailed by INS to my client, and it doesn't say anywhere within that notice that a birth certificate is required. Well, it can if it's checked off, right? It's not checked off here. See the boxes? Yes. You must also bring with you what is checked below. Yes. And it's not checked off. But it's something they sometimes ask for then, right? It is, but it's a little bit confusing because my client was a green card holder. She must have supplied her birth certificate in order to receive her green card. Additionally, there was some confusion as to the actual birth certificate that was in the ROP, whether it was considered authentic. And it's on page 109 of the administrative record. Which page? 133. And this document is stamped by the American Embassy in Kingston, Jamaica. So I've never been trained as a member of the USCIS or the INS, but I would assume that once a birth certificate has been stamped by an American Embassy abroad, that it would defeat any claims. She could have raised this if she appealed, right? We did include the ---- No, I mean in the 30 days. In 2000, when she got the notice saying, you didn't bring in your birth certificate, we're denying it. We have 30 days in which to file a form to appeal that administratively. And she could have come in and said, first of all, you shouldn't need the birth certificate because I've got a green card. Secondly, if you do, here's one. It's got the stamp of some government in Jamaica.  Yes, Your Honor. It's our contention that my client, she went to, as I said before, she went to immigration and she was told that and she believed that her naturalization oath was forthcoming. However, she did not meet the original 30-day deadline. It's also our position that in the district court cases in Young and Martinez, they said that there is no waiver of the filing of the N336 when it has not been filed, meaning you can't skip over the N336 and go to a mandamus directly. So it's our position that even if a late filed N336, it's better late than never. And the previous court cases merely said that you still have to file an N336. You can't go directly to the mandamus. But there is, at least through Supreme Court jurisprudence, a suggestion that administrative records, appeals, or questioning of them has to be done in a timely fashion. And we're stuck with 14 years, right? It's our position that there is that contention. However, when it comes to constitutional rights such as citizenship, there is more of a leniency that is involved, especially in the Supreme Court case of Wong and other Supreme Court cases, saying that when it's a fundamental due process right, such as citizenship, that hopefully the rules are a little bit looser. Finally, we believe that we did include the birth certificate issue in the N336. And this Court has held in Gill that a Petitioner is never exactly limited to the contours of the argument below. I just see the, I couldn't find the N336 that you filed recently. Where is that in the record? Yeah, please. Yeah, thanks, Mr. Dunn. Page 23 of the supplemental, the essay page 23, and page 8 of the administrative record. What do you say you raised there? We raised the issue regarding the birth certificate. It states in there that she did deliver the birth certificate. And that we would pause it to the Court. That would preserve her argument. The point you're making is that her sworn statement here counts as supporting documentation of the reason for the failure to bring the appeal on time. Yes, Your Honor. Thank you. Thank you very much, Your Honor. Thank you both. We'll reserve decisions.